

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

September 24, 2025

**Via ECF**

Honorable Valerie E. Caproni
United States District Judge for the
Southern District of New York
500 Pearl Street
New York, NY 10007

    Re:    *United States v. Christian Irizarry*, 25 Cr. 276 (VEC); 20 Cr. 127 (VEC)

Dear Judge Caproni:

    The Government respectfully submits this letter in advance of the October 8, 2025 sentencing in both 25 Cr. 276 and the violation of supervised release in 20 Cr. 127.

    On May 27, 2024, the defendant—who, at the time, had twelve prior criminal convictions and was less than three months into a term of federal supervised release imposed in connection with a heroin trafficking conviction in this District—was involved in an altercation on a public street in the Bronx and opened fire with a .40 caliber Smith & Wesson semi-automatic pistol. The defendant fired approximately four shots and then attempted to discard the firearm, tossing it into a tree bed. Shortly thereafter, the defendant was arrested by plain clothed officers from the New York City Police Department ("NYPD") who had been in a nearby precinct and were informed that the defendant had been the shooter. The defendant, who appeared visibly intoxicated, told one of the officers, "If I had known you were a cop, I would've shot you," and then became combative at the precinct, attempting to fight other NYPD officers and kicking over computers.

    The defendant's conduct in this case could have easily resulted in someone having been killed or injured. When viewed in light of the defendant's numerous prior criminal convictions, including his most recent federal criminal conviction (for which he was on supervised release at the time of the shooting), such conduct undoubtedly requires the imposition of a significant sentence. The defendant has demonstrated that prior criminal convictions and terms of imprisonment and supervision have failed to deter him from committing crimes that endanger those around him. Indeed, and to make matters worse, just two weeks ago, while awaiting sentencing in the instant case, the defendant was involved in a fight at the MDC in which he and another inmate used sharpened homemade weapons to attack each other, resulting in the imposition of disciplinary sanctions. Put simply, the defendant has repeatedly committed serious crimes over the past two decades and has shown no signs of slowing down.

    The Section 3553(a) factors weigh heavily in favor of a sentence within the applicable Guidelines range of 70 to 87 months' imprisonment for the defendant's felon in possession

conviction, to be followed by a consecutive sentence within the applicable Guidelines range of 6 to 12 months' imprisonment for his violation of supervised release. As set forth below, such a sentence would be sufficient but not greater than necessary to achieve the goals of sentencing.

## I. The Offense Conduct

On or about November 30, 2021, the defendant was convicted in the Southern District of New York of conspiracy to distribute and possess with intent to distribute mixtures and substances containing a detectable amount of heroin, in violation of Title 21, United States Code, Sections 841(b)(1)(C) and 846, after undercover agents made at least fifty controlled purchases of heroin from the defendant. (*See* September 12, 2025 Final Presentence Investigation Report ("PSR") ¶ 45). On or about June 14, 2022, the Honorable Gregory H. Woods sentenced the defendant to 57 months' imprisonment and three years' supervised release. (*Id*.). The defendant was released from federal custody on or about March 1, 2024, and began his supervised release term. (*Id*.).

On May 27, 2024, less than three months into the defendant's term of federal supervised release, two unknown individuals (the "Witnesses") approached an NYPD officer ("Officer-1") at an NYPD police precinct in the vicinity of East 156th Street and Melrose Avenue in the Bronx, New York, to report that an individual was shooting a firearm in the area outside the precinct. (PSR ¶ 7). Around this same time, the NYPD also received a shotspotter notification alerting officers to possible gunshots in the area, and multiple 911 calls were place reporting that a man had fired approximately four shots following a verbal altercation on the street. (*Id*. at ¶¶ 6-7).

Immediately thereafter, Officer-1 and another NYPD officer ("Officer-2") accompanied the Witnesses outside of the precinct, and the Witnesses pointed at an individual in the vicinity of East 157th Street and Melrose Avenue who was wearing a white shirt and dark pants, later identified as the defendant, and identified him as the shooter. (PSR ¶ 8). Officer-1 approached the defendant, who was standing on the corner of East 157th Street and Melrose Avenue with another man and detained the defendant. (*Id*. at ¶ 9). Officer-1 observed that the defendant appeared to be under the influence of alcohol. (*Id*.). Around that same time, other NYPD officers arrived to help canvas the surrounding area and search for any weapons or ammunition. (*Id*.).

Shortly thereafter, NYPD officers canvassing the surrounding area, including Officer-1, observed a silver and green .40 caliber Smith & Wesson semi-automatic pistol (the "Firearm") in a tree bed outside of 415 East 157th Street (the "Building"), located near the corner of East 157th Street and Melrose Avenue, where the defendant was detained. (PSR ¶ 10). NYPD officers, including Officer-1, also observed four spent .40 caliber Smith & Wesson shell casings up the block towards Elton Avenue on East 157th Street. (*Id*.). Photographs of the recovered Firearm and shell casings are below:



Security camera footage captured the defendant discharging the Firearm. (PSR ¶ 14). In particular, security camera footage collected from the outside of 428 East 157th Street, which is up the block from the Building and in the vicinity of where the spent shell casings were recovered, shows that the defendant pulled out the Firearm from his waistband, wiped it with a towel, and then racked the slide, before walking out of view of that security camera, back in the direction of the Building. (*Id.*). A still photograph of that security camera footage is below, with the Firearm circled in red:



Surveillance footage depicting the outside of the Building also shows that, around the time of the reported shooting, the defendant walked on East 157th Street, past the Building, and towards Elton Avenue. (PSR ¶ 13). Approximately 30 seconds later, another man ("Individual-1"), who had been with the defendant moments earlier and who was standing outside of the Building, rapidly ducked and crouched to the ground, while the defendant was out of sight of the surveillance camera. (*Id.*). Immediately thereafter, the defendant ran back towards the Building and appeared to hand something to Individual-1. (*Id.*). Individual-1 immediately walked towards the tree bed outside of the Building, *i.e.*, where the Firearm was later recovered, and appeared to bend over and

place something in the tree bed. (*Id*.). The video surveillance shows that, shortly thereafter, the defendant was approached by Officer-1 and other NYPD officers on the corner of East 157th Street and Melrose Avenue. (*Id*.).

After the Firearm and shell casings were recovered and the defendant was arrested, NYPD officers took the defendant back to the precinct for processing. (PSR ¶ 11). While at the precinct, the defendant told Officer-1 (who had been in plain clothes at the time that Officer-1 approached the defendant earlier that evening), in sum and substance, and unprompted, "If I had known you were a cop, I would've shot you" and that defendant was "going to get in trouble with the feds." (*Id*.). Officer-1 continued to observe that the defendant appeared to be under the influence of alcohol and/or drugs. (*Id*.). The defendant was then transported to the 40th Precinct in the Bronx, where he became increasingly combative, attempting to fight NYPD officers and kick over computers in the precinct. (*Id*.).

The firearm and ammunition were vouchered and later tested by an NYPD laboratory. The firearm, which, at the time it was recovered, was loaded with one .40 caliber Smith & Wesson bullet in the chamber and seven .40 caliber Smith & Wesson bullets in the magazine, was test fired and found to be operable. (PSR ¶ 12).

## II. Procedural History

As noted above, in 2020, the defendant was indicted in this District with conspiracy to distribute 100 grams and more of mixtures and substances containing a detectable amount of heroin, in violation of Title 21, United States Code, Sections 846, 841(b)(1)(B). *See United States v. Irizarry*, 20 Cr. 127 (GHW). That case was assigned to the Honorable Gregory H. Woods. In 2022, the defendant pled guilty to a superseding information, which charged the defendant with conspiring, from 2008 to 2019, to distribute mixtures and substances containing a detectable amount of heroin, in violation of Title 21, United States Code, Section 846, 841(b)(1)(C). On June 14, 2022, the defendant was sentenced to 57 months' imprisonment to be followed by three years' supervised release.

The defendant's term of federal supervised release began on March 1, 2024. Less than three months later, on May 28, 2024, the United States Probation Office filed a violation report requesting a warrant for the defendant's arrest stemming from his participation in the shooting described above, as well as for his use of marijuana on two occasions. On June 3, 2024, the defendant was brought into federal custody and was presented before the Honorable Stewart D. Aaron. The defendant was ordered detained and has been in federal custody since that time.

On February 12, 2025, the defendant was charged by complaint in this District with one count of being a felon in possession of a firearm, in violation of Title 18, United States Code, Sections 922(g)(1) and 2, in connection with the shooting described above. On June 17, 2025, the defendant waived indictment and pled guilty to an information charging him with the same violation, pursuant to a plea agreement with the Government that stipulated to a Guidelines range of 70 to 87 months' imprisonment. That case was assigned to Your Honor.

On July 22, 2025, the defendant appeared before Judge Woods on the violation of supervised release. The defendant admitted to two specifications, one relating to his possession of a firearm on May 27, 2024, tracking his guilty plea in the felon in possession case, and the other relating to his use of marijuana on two occasions on March 28, 2024 and April 10, 2024.

On July 28, 2025, the Government filed a related case letter. On July 31, 2025, the Court reassigned the defendant's violation of supervised release and ordered that the parties address both the felon in possession conviction and violation of supervised release in their sentencing submissions.

### III. The Probation Department's Recommendation

The Probation Department reached the same Guidelines calculation as is set forth in the plea agreement. (PSR at 28). The Probation Department has recommended a sentence of 70 months' imprisonment, to run consecutive to any term of imprisonment imposed for the defendant's violation of supervised release. (*Id.*).

In support of that recommendation, the Probation Department emphasized that the defendant is a "repeat offender who was undeterred by multiple prior terms of probation and imprisonment." *(Id.)*. The Probation Department also noted that the defendant's "persistent involvement in criminal activities as well as his poor adjustment to his most recent term of community supervision are an indication that he is not amenable to community supervision." (*Id.*). Moreover, the Probation Department emphasized the "grave risk of harm or even death" that resulted from the defendant's actions, in which he "fired multiple rounds in public area, threatened to shoot a law enforcement officer, and resisted arrest." (*Id.*).

### IV. The September 2025 Fight at MDC

After the PSR was issued, the Government learned that, on or about September 9, 2025, the defendant was involved in a fight at the MDC in which he and another inmate were observed "striking each other with closed fists to the head and upper torso area with sharpened homemade weapons."[1] Despite being told to stop, the defendant and the other inmate refused, requiring MDC staff to use liquid aerosol dispensers to break up the fight. As a result, the defendant was sanctioned in the form of a 27-day disallowance of good conduct time, 20 days of disciplinary segregation, and 120 days of loss of visits.

### V. Applicable Law

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court held that the Guidelines are not mandatory; however, it also held that a district court must "consult" the Guidelines and "take them into account" when fashioning a sentence. *Id.* at 264. As the Supreme Court has explained, "a district court should begin all sentencing proceedings by correctly

---

[1] Copies of the incident report, along with the defendant's BOP disciplinary records, were previously provided to defense counsel and are being provided to the Court by email.

calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall* v. *United States*, 552 U.S. 38, 49 (2007).

After that calculation, a court must proceed to consider seven factors outlined in 18 U.S.C. § 3553(a): (i) "the nature and circumstances of the offense and the history and characteristics of the defendant," *id.* § 3553(a)(1); (ii) the four legitimate purposes of sentencing, *see id.* § 3553(a)(2); (iii) "the kinds of sentences available," *id.* § 3553(a)(3); (iv) the Guidelines range itself, *see id.* § 3553(a)(4); (v) any relevant policy statement by the United States Sentencing Commission, *see id.* § 3553(a)(5); (vi) "the need to avoid unwarranted sentence disparities among defendants," *id.* § 3553(a)(6); and (vii) "the need to provide restitution to any victims," *id.* § 3553(a)(7).

The statute directs courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, pursuant to which the sentence needs:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

*Id.* § 3553(a)(2).

While a district court may not presume that an appropriate sentence lies within the Guidelines range, "the fact that § 3553(a) explicitly directs sentencing courts to consider the Guidelines supports the premise that district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Gall*, 552 U.S. at 50 n.6. The relevance of the Guidelines throughout the sentencing process stems in part from the fact that, while the Guidelines are advisory, "the sentencing statutes envision both the sentencing judge and the Commission as carrying out the same basic § 3553(a) objectives," *Rita* v. *United States*, 551 U.S. 338, 348 (2007), and the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall*, 552 U.S. at 46; *see also Rita*, 551 U.S. at 349. To the extent a district court varies from a Guidelines sentence, "[it] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Gall*, 552 U.S. at 50

Separately, when imposing a sentence for a violation of supervised release, the Court must consider the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7), including the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence imposed to afford adequate deterrence to criminal conduct and to protect the public from further crimes of the defendant, and the applicable Guidelines range. *See* 18 U.S.C. §§ 3553(a); 3583(e). In assessing the appropriate sentence for violating conditions of supervised release, "the primary goal of a revocation sentence" is "to sanction the violator for failing to abide by the conditions of the court-ordered supervision," in order to account for the breach of trust inherent in failing to follow the court-imposed conditions of supervised release. U.S.S.G. Ch. 7, Pt. A(3)(b). Thus, "at revocation the court should sanction

primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator." *Id.*; *see also United States v. Peguero*, 34 F.4th 143, 161 (2d Cir. 2022); *United States v. Sindima*, 488 F.3d 81, 86 (2d Cir. 2007).

Pursuant to Guidelines Section 7B1.3(f), a violation sentence shall be served consecutively to any other sentence the defendant is serving, whether or not the sentence of imprisonment being served resulted from the conduct that is the basis of the revocation.

## VI. Sentences Within the Applicable Guidelines Ranges Are Warranted in this Case

The Government respectfully submits that a sentence within the applicable Guidelines range of 70 to 87 months' imprisonment for the felon in possession conviction, to be followed by a sentence within the applicable Guidelines range of 6 to 12 months' imprisonment for the violation of supervised release, is warranted. In particular, the seriousness of the offense, the history and characteristics of the defendant, the need to promote respect for the law, and the importance of achieving deterrence all support the imposition of such sentences.

### 1. The Felon in Possession Conviction

To start, a sentence within the Guidelines range of 70 to 87 months' imprisonment for the felon in possession conviction is warranted here.

*First*, standing alone, the seriousness of the defendant's conduct warrants significant punishment. The defendant, who had twelve prior criminal convictions at the time, including multiple prior felony convictions, unlawfully possessed a firearm within less than three months of completing a 57-month sentence for a federal narcotics trafficking conviction and while on supervised release for that conviction. But the defendant did not just merely unlawfully possess a gun (a serious crime in its own right)—he had the gun in public and fired approximately four shots on a public street in connection with an apparent verbal dispute with unknown individuals. Luckily, it does not appear that anyone was hurt. But that does not take away from the seriousness of the defendant's conduct, which placed innocent members of the public at risk of being killed or injured. And as the Probation Department recognized, during the shooting, the defendant wiped down the gun with a towel, in what appears to have been a "calculated effort to evade arrest . . . before discarding the firearm in a tree bed." (PSR at 29). What is more, the defendant—who was apparently intoxicated at the time—then told Officer-1, who was in plain clothes at the time he approached the defendant on the street, that "If I had known you were a cop, I would've shot you." And when he was brought to the precinct for processing, the defendant attempted to fight multiple NYPD officers and kicked over computers. The seriousness of the defendant's crime, combined with the defendant's attempts to avoid and resist arrest, and his brazen and chilling threat to Officer-1, thus weigh heavily in favor of a Guidelines sentence.

*Second*, the defendant's sentences for his *twelve* prior convictions were clearly inadequate to deter him from continuing to commit more crimes, culminating in the instant offense—the defendant's thirteenth criminal conviction—and his violations of supervised release. The defendant has demonstrated, by his repeated criminal behavior spanning over two decades, that he presents a serious danger to the community. The felon-in-possession laws seek to keep firearms

out of the hands of individuals who have a history of breaking the law. Where, as here, a defendant with an extensive and troubling criminal record demonstrates by his conduct that he has not been deterred by the punishment imposed for his prior crimes, the Court must act to protect the public from further crimes of the defendant and to deter the defendant from committing additional crimes. Indeed, as described above, the defendant's criminal history is littered with offenses that harm the public, including numerous drug trafficking convictions. Accordingly, a sentence within the applicable Guidelines Range is required to protect the public, to specifically deter the defendant from committing additional crimes in the future, and to send a message to would-be offenders, including repeat offenders, that those who unlawfully possess and use firearms will receive serious punishment.

*Third*, the defendant's history and characteristics strongly militate in favor of a sentence at within the Guidelines Range. The defendant has repeatedly demonstrated that he has little respect for the rule of law and that he will continue to engage in criminal conduct, notwithstanding a litany of prior convictions, several of which resulted in lengthy terms of incarceration and supervision. Indeed, since 2004, the defendant has sustained numerous convictions for criminal trespassing, unauthorized operations of a vehicle, and drug-relates offenses. Most recently, Judge Woods sentenced the defendant to a term of 57 months' imprisonment in connection with a federal narcotics trafficking conviction, and, within three months of being released from jail, unlawfully possessed a gun and fired multiple shots from that gun on a public street during an apparent verbal altercation with unknown individuals. As noted above, while no one appears to have been hurt, the defendant's actions could have resulted in tragic consequences, including the deaths of innocent bystanders. Even more troubling, while awaiting sentencing in the instant case, the defendant was involved in a physical altercation at the MDC in which it appears that he and another used homemade weapons to attack each other. Put simply, the defendant has demonstrated, time and again, that he presents a clear danger to those around him and that he refuses to abide by the law. A sentence within the Guidelines thus also accounts for the defendant's troubling criminal history and his decision to continue committing crimes that harm the public over the past two decades and during the pendency of this case.

### 2. Violations of Supervised Release

A consecutive sentence within the Guidelines range of 6 to 12 months' imprisonment for the violations of supervised release is also needed to serve the purposes of sentencing, including to sanction the defendant's serious breach of the Court's trust.

*First*, the nature and circumstances of the defendant's conduct demonstrate an utter lack of respect for the Court, Probation, and the requirements of his supervised release. As described above, within three months of being on supervised release, the defendant unlawfully possessed a gun and fired multiple shots on a public street. This abuse of the Court's trust shows that the defendant has no regard for the rule of law or any court-imposed supervision. In fact, as the Probation Department recognized, the defendant's "persistent involvement in criminal activities as well as his poor adjustment to his most recent term of community supervision are an indication that he is not amenable to community supervision." (PSR at 29). A significant custodial sentence is warranted to sanction the serious breach of trust and to send the message that the defendant must abide by the terms of his supervised release.

*Second*, a significant, consecutive sentence of imprisonment for the violations of supervised release is necessary to afford adequate deterrence to the defendant. The defendant will likely serve another term of supervised release when he is released from a new term of imprisonment. The conditions of supervised release are there to assist the defendant in adapting to a new, lawful life, and to prevent the defendant from falling into bad habits. The defendant must understand that there are consequences for failing to comply with the conditions of supervised release.

\* \* \*

For the reasons set forth above, the Government respectfully submits that the Court should impose a sentence within the applicable Guidelines range of 70 to 87 months' imprisonment for the felon in possession conviction, and a consecutive sentence within of the applicable Guidelines range of 6 to 12 months' imprisonment for the defendant's violations of supervised release.

Respectfully submitted,

JAY CLAYTON
United States Attorney

By: /s/
    Ni Qian
    David J. Robles
    Assistant United States Attorneys
    (212) 637-2364 / 2550

cc:    Defense Counsel (by ECF)